UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS LINARES CARDENAS (A-088-795-489),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br>Respondent. | No. 1:26-cv-08291-DC-CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Andreas Linares Cardenas (A 088-795-489), a native and citizen of Cuba who is proceeding without counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was paroled into the United States in May 1980, ordered removed in March 1992, and released on orders of supervision due to Cuba's refusal to accept repatriation. On February 5, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained petitioner again and is attempting to remove him to Mexico. This habeas action concerns petitioner's current detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Cuba who was paroled into the U.S. in May 1980 as part of the

[1] Petitioner is proceeding in forma pauperis. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72 and Local Rule 302(c)(17).

Mariel boatlift. (ECF No. 1 at 3.) On March 10, 1992, petitioner was issued a removal order to Cuba "or any country which will accept him" following multiple criminal convictions. (ECF No. 5 at 39.) ICE has previously detained and released petitioner on orders of supervision because Cuba has not accepted petitioner's repatriation. (ECF No. 1 at 3.) On February 5, 2026, ICE detained petitioner after petitioner's release from prison.[2] (Id.) On March 4, 2026, ICE informed petitioner that they would conduct a review of his custody on May 4, 2026, informed petitioner of their intention to remove him to Mexico, gave him a list of instructions to assist with removal, and served him with a warning of the consequences of failure to depart. (ECF No. 5 at 2, 41-46.) ICE served the instructions and warnings again on April 23 and April 29, 2026. (Id. at 43-56.) At the May 14, 2026 custody review, ICE determined that continued detention was warranted because petitioner had failed to comply with their instructions. (Id. at 58-63.) ICE served the same instructions and warnings three more times in June, August, and September 2026. (Id. at 65-81.) Petitioner has refused to consent to removal to Mexico and has notified ICE of his fear of harm in Mexico. (ECF No. 1 at 4.)

## II. PROCEDURAL BACKGROUND

On October 9, 2026, petitioner filed this petition for writ of habeas corpus. (ECF No. 1.) On October 22, 2026, respondent filed a timely answer to the petition. (ECF No. 5.) Petitioner did not file a traverse. Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

[2] Petitioner's criminal history includes several convictions spanning from 1982-2017 for attempted murder, assault, resisting arrest, trespass, various forms of theft/larceny, possession of a controlled substance, and burglary. (ECF No. 5 at 7-37)

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner claims that the proposed third-country removal to Mexico is unlawful, that there is no likelihood of removal in the reasonably foreseeable future, and that his ongoing, prolonged detention serves no legitimate government purpose.[3] (ECF No. 1 at 4, 5, 8.) Respondent asserts that petitioner is properly detained pursuant to 8 U.S.C. §1231(a)(6) because he is subject to a final removal order[4] and that detention beyond the 90-day removal period remains lawful because petitioner is not cooperating with removal efforts. (ECF No. 5 at 3-4.)

### A. Detention Authority

In analyzing petitioner's challenge to his detention, the Court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark,

---

3 Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes the latter two claims as challenging petitioner's prolonged detention under the Due Process Clause of the Fifth Amendment. Though the Court is recommending release on due process grounds and need not reach petitioner's arguments regarding the lawfulness of third-country removal to Mexico, the Court notes its agreement with other district courts that removal to a third country without giving petitioner an opportunity to assert a fear-based claim would violate due process. See, e.g., Vu v. Noem, No.1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); Nguyen v.Scott, No. 2:25-cv-01398, 2025 WL 2419288, at *18–23 (W.D. Wash. Aug. 21, 2025); Zakzouk v. Becerra, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); Baltodano v. Bondi, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).

4 Respondent also notes that revocation of an order of supervision is lawful per 8 C.F.R. § 241.13(i)(2) if circumstances change such that removal becomes significantly likely in the reasonably foreseeable future. As discussed below, the Court finds no significant likelihood of removal in the reasonably foreseeable future. Respondent did not claim that revocation of release was proper per § 241.13(i)(1) for any violation of conditions of release. For these reasons, the revocation of release was likely unlawful. However, because petitioner did not raise a claim regarding the lawfulness of the revocation of release, and because the Court is recommending release on other grounds, the Court need not reach this issue. The Court notes that the government may revoke the release of noncitizens, but must follow its own regulations and take such action lawfully.

534 F.3d 1053, 1057 (9th Cir. 2008). The Court concludes that petitioner is currently detained pursuant to 8 U.S.C. § 1231(a)(6).

Once a final order of removal has been issued, detention is governed by 8 U.S.C § 1231. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). The 90-day removal period may be extended if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal. 8 U.S.C. § 1231(a)(1)(C).

Petitioner's removal order became administratively final in 1992, and the 90-day removal period has long since elapsed. (ECF No. 5 at 39.) Respondent argues that detention remains lawful in part because petitioner "failed to comply with ICE's efforts to remove [him] to Mexico and ha[s] failed to comply with [his] obligation to assist with the removal process," thereby warranting extension of the removal period per 8 U.S.C. § 1231(a)(1)(C). The Court finds that respondent has not demonstrated that petitioner has failed or refused to make timely, good faith efforts for travel documents or has conspired to prevent removal. See 8 U.S.C. § 1231(a)(1)(C). Respondent issued to petitioner, several times, an "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal" (hereinafter "instruction sheet"). (ECF No. 5 at 43-44, 49-50, 59-60, 66-67, 74, 78, 81.) The instruction sheet included a list of 11 items that ICE required petitioner to provide within 30 days of receipt of the form "in order to comply with your obligations to assist in obtaining a travel document." (Id.) Some tasks on the instructions sheet, such as providing passports or other documents establishing nationality, applying for a travel document from country of nationality, and contacting embassy of country of nationality, could be considered reasonable actions to assist in a removal. However, many of those instructions would not be applicable to petitioner's removal, as ICE is no longer attempting to remove him to his country of nationality. It is also unclear how some tasks on the list, such as providing names and addresses of family and friends residing in the U.S., are reasonably related to obtaining travel documents. The instruction sheet also orders petitioner to "solicit permission from another country, which may be able to accept you, to enter that country to effect your removal from the

United States." (Id.) It does not specify a country, nor does it cite to any authority requiring a noncitizen to take affirmative steps to solicit permission from a third country to accept him. The tasks on the instruction sheet appear to go beyond reasonable assistance in obtaining travel documents. Respondent's allegation that petitioner failed or refused to complete any or all of the tasks on the instruction sheet does not demonstrate that petitioner engaged in "intentionally obstructionist, bad faith tactics...designed to frustrate the government's attempts to effectuate a removal order…" Diouf v. Mukasey, 542 F.3d 1222, 1231 (9th Cir. 2008). Therefore, § 1231(a)(1)(C) does not extend the 90-day removal period in the instant matter.

Detention *after* the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). After the 90-day removal period has elapsed, ongoing detention is authorized for those who are inadmissible under 8 U.S.C. § 1182, removable under § 1227(a)(1)(C), (a)(2), or (a)(4) or who DHS determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.SC. § 1231(a)(6). Petitioner was ordered removed pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) and § 1227(a)(2)(B), and thus his detention beyond the 90-day removal period is governed by 8 U.S.C. § 1231(a)(6). (See ECF No. 5 at 39.)

**B. Due Process**

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas v. Davis, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six

month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Regulations issued by the Department of Homeland Security ("DHS") in the wake of Zadvydas require internal review of the ongoing detention of a noncitizen who has a final removal order. See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001). After the 90-day removal period has expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1). The specific conditions of supervision are described in INA § 241(a)(3) and 8 C.F.R. § 241.5. See 8 C.F.R. § 241.13(h)(1).

Petitioner has been detained for almost ten months and detention has therefore exceeded the presumptively reasonable six-month period. Petitioner has also met his burden of establishing a "good reason to believe" that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner alleges, and respondent does not refute, that in the over 34 years since the 1992 removal order, respondent has been unsuccessful in effectuating removal to Cuba.

In this case, there is no countervailing evidence in the record to demonstrate a reasonable likelihood of petitioner's removal to either Cuba or Mexico in the reasonably foreseeable future. Respondent provided no evidence to demonstrate that Cuba would now be willing to accept petitioner, and their attempt to remove petitioner to Mexico implies that they do not foresee effectuating removal to Cuba. As to removal to Mexico, the Court acknowledges that the 1992 removal order designated "Cuba or any country which will accept him" (ECF No. 5 at 39), but respondent provided no evidence that Mexico would indeed accept petitioner, nor that Mexico is an otherwise permissible country for petitioner's return. See 8 U.S.C § 1231(b)(2)(D), (E).

Respondent argues that petitioner "cannot complain about his continued detention when

his conduct is the sole cause," claiming that petitioner "has been obstructing efforts at removal." (See ECF No. 5 at 4 (citing Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003) ("We therefore join the existing chorus of courts and hold that a[] [noncitizen] cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him.") (internal citation omitted)); Lema v. I.N.S., 341 F.3d 853, 856 (9th Cir. 2003) ("We hold today, consistent with Zadvydas and Pelich, that when a[] [noncitizen] refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the [noncitizen] cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future. We cannot know whether an alien's removal is a remote possibility, until the alien makes a full and honest effort to secure travel documents." (cleaned up) (citations omitted)). As discussed above, the record does not demonstrate that petitioner has obstructed efforts at removal. Neither petitioner's unwillingness or fear of being removed to Mexico nor his lack of compliance with the instruction sheet constitute a failure to cooperate with removal efforts.

Petitioner has sufficiently established that his removal is not reasonably foreseeable and that his ongoing detention is not reasonably necessary to secure his removal. See Zadvydas, 533 U.S. at 699-700. The Court therefore concludes that petitioner's current detention violates due process.

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondent be ordered to IMMEDIATELY RELEASE petitioner Andreas Linares Cardenas (A 088-795-489) under the same conditions he was previously released in any prior order of supervision. If respondent has custody of petitioner's personal possessions and documents (e.g., identification, passport, employment authorization document, Social Security card, etc.), respondent shall return those to petitioner at the time of release;
3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance

with the requirements of 8 C.F.R. § 241.13(I) for revocation of release, and any other applicable statutory and regulatory procedures; and

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 23, 2026

Chi Soo Kim

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

11/lina8291.157.2241.imm.release